## STATE *v.* SIMONS.

Upon trial of an indictment for selling spirits without license, if proof be made of the sale, the jury may presume that the defendant has no license, from his omission to produce one.

Evidence that a person called for spirit, and that the defendant soon after delivered it, may be left to the jury as evidence of a sale, notwithstanding the defendant used language tending to signify that the article was delivered as a gift, and that the money paid was for another purchase made at the time.

INDICTMENT, alleging that the defendant, not being a licensed taverner or retailer, sold two glasses of spirituous liquors to one George Stevens, on the first day of January, 1845.

It appeared that about the first of January, 1845, said Stevens and one James Collins came into the defendant's cellar in Manchester, where he kept fruits and confectionery, and Stevens called for some spirit, but the defendant replied that he did not sell spirit, and refused to sell them any; that Stevens then bought a pound of walnuts, and paid him sixteen cents for them, and the defendant "said he had opened a new cellar, and wished Stevens to look about it, and said further that he could afford to treat, and then took Stevens and Collins into a back cellar, under the tenement which he occupied, and asked them what they would take, naming over the kinds of liquor contained in the casks which stood in the cellar. Stevens answered "rum," and he let each of them have a glass of it. Both cellars were under the same building, but separated by a reading-room.

The court instructed the jury that the statute upon which the indictment was founded was constitutional.

The defendant's counsel requested the court to instruct the jury that " there was a sale of the nuts and the purchase money paid, and a delivery; that the sale was therefore

complete, and that no article delivered afterwards could be included in that sale; and also that the spirituous liquor alleged in the indictment to have been sold, was a gift."

But the court declined, and instructed the jury, that *if* they found that the sale of the nuts was a *bonâ fide* sale of the nuts only, and the delivery of the spirit was in no way consequent upon the sale of the nuts, but was a gift, the defendant was not chargeable; but if they found that the sale of the nuts was made with the intention of including also the price of the liquor, and that the price of the liquor was taken and included in the money paid ostensibly for the nuts, it was the same as if the liquor had been sold directly, and without any such subterfuge; that in the latter case it would make no difference whether the spirit was delivered before or after the payment of the money. The court further instructed the jury that it was not incumbent upon the State to prove that the defendant had no license, that being matter of defence.

The jury found the defendant guilty, and he moved to set aside the verdict and for a new trial, for misdirections of the court.

*Walker*, Attorney-General, for the State.

*Barstow*, for the defendant, cited Archb. Cr. Pl. 107, 108; 1 East P. C. 785; 2 do. 1021; 5 M. & S. 206, to show that the prosecution must prove the negative averments.

GILCHRIST, J. The indictment charges the defendant with having, at the time and place which it indicates, sold two glasses of spirituous liquors, and in substance avers that he was not at that time a licensed taverner or retailer. This averment was without any doubt a necessary one, in order to complete the description of any offence under the laws of this State; and the only question presented by the case is, whether the fact of selling was proved, and

State *v.* Simons.

whether the negation of the license was required to be proved at all on the part of the prosecution.

By the 117th chapter of the Revised Statutes, which contains a description of the offence, and prescribes the penalty, it is provided that the selectmen may, upon application, license a suitable person to exercise the business of a taverner in the town. (Sec. 1.) They may also license any retailer to sell wine and spirituous liquors under certain restrictions. (Sec. 5.) The statute also requires that these licenses should be in writing, and should be recorded by the town-clerk, before they can take effect so as to protect or authorize such sales of liquors.

In the case of *The Commonwealth* v. *Thurlow*, 24 Pick. Rep. 380, the chief justice, considering this question, says, "How far and whether under various circumstances it is necessary to prove such negative averments, is a question of great difficulty, upon which there are conflicting authorities : That although the difficulty of obtaining proof is not to supersede the necessity of it, yet, when the proceeding is upon statute, the extreme difficulty of obtaining proof on one side amounting nearly to an impracticability, and the great facility of furnishing it upon the other, lead to a strong inference that such course was intended by the legislature to be required. The result is, that as the county commissioners are required by law to keep a record of the licenses, the proof is equally accessible to both parties. The negative averment can be proved with great facility, and therefore should be proved."

But the English authorities are the other way. The general principle is stated in 2 Russ. on Crimes, 770, to be, in cases in which the indictment contains, as in this, a negative averment, that when the affirmative is peculiarly within the knowledge of the party charged, the presumption in favor of innocence does not prevail so far as to require the prosecution to prove the negative, but the general rule revives, which requires the party relying upon

---
State *v.* Simons.
---

a fact to prove it. He cites *Rex* v. *Turner*, 5 M. & S. 209, which was a prosecution against a carrier for having game in his possession. It was held sufficient that the qualifications were negatived in the information, without negativing them in the proof. Lord *Ellenborough* said there were about ten different heads of qualification enumerated in the statute, and if the informer were required to negative them all, there would be a moral impossibility of convicting.

*Rex* v. *Hanson*, cited in the same work, was an indictment for selling ale without a license. *Abbott*, C. J., said that "the defendant might have produced the license without any possible inconvenience, and that by the general rule the informer was not bound to sustain in evidence the negative averment that the defendant had not a license. The informer might be put to considerable inconvenience, because discussions might arise before magistrates, whether the evidence produced is proper; whether a book should be produced, or an examined copy, but none could arise when the defendant produced his license."

The case of *Rex* v. *Turner* was referred to, in which he said that all the judges concurred in the principle, that the prosecutor is not called upon to prove negatively all that is stated in the information as matter of disqualification.

In *Rex* v. *Smith*, 3 Bur. 1475, the defendant was convicted of being a hawker and pedler without a license, upon evidence that he sold goods as a hawker, and, upon being requested by the justice before whom he was arraigned, to produce his license, his omission to do so. The principal question in the case was founded upon the circumstance that the statute described two offences; that of trading without a license, and that of refusing on request to produce a license. The evidence was held to be sufficient for the conviction of the former, which was the one charged.

In *Willis's Case*, cited in Hawk. Pl. Cr., chap. 89, sec. 17,

it was held, that an allegation that the defendant was not a contractor for the king, &c. need not be proved, it being a negative averment; but the defendant must show, in excuse or avoidance, that he was such.

So where the defendant was charged with practising as an apothecary without having obtained a license, the negation of the license need not be proved. *Apoth. Co.* v. *Bentley*, Ry. & M. N. P. C. 159.

The same point was decided in New-York in *Sheldon* v. *Clark*, 1 Johns. Rep. 513. This was an action of debt for the penalty for practising physic contrary to the statute. It was held that the averment, that the defendant practised physic contrary to the statute, was sufficient, and that it was incumbent on the defendant by plea to have brought himself within some of the provisions of the act.

So it is settled that in indictments in which it is necessary to allege the non-consent of the owner of the property which is the subject of the charge in the indictment, the testimony of the owner himself is not exclusively primary evidence of the non-consent; but it may be inferred from the conduct of the prisoner and the circumstances under which the act was done. These cases were decided upon the ground that some evidence of the non-consent was necessary, but that it need not be of the most direct and positive kind. 2 Russ. on Crimes, 737.

In *Gearing* v. *The State*, 1 McCord Rep. 573, cited in Cowen's and Hill's Notes Phil. Ev. 199, note 383, it was held that the prosecutor need not prove the want of license in an indictment for selling liquors without license.

In *qui tam* actions for marrying minors without the consent of their parents or guardians, the burden was held to be on the defendant to show such consent. *Medlock* v. *Brown*, 4 Miss. 379, cited in the U. S. Digest, vol. 4, 716.

Some of the reasons alleged in several of these cases, if we felt bound to conclude that the decisions were founded upon no other, are not wholly satisfactory. It would be

palpably unjust, for instance, to excuse the prosecutor from producing the evidence required by law to overcome the legal presumptions in favor of innocence, for no other reason than that its production would be highly inconvenient and difficult. So the general principle distinguishing criminal from civil pleading and evidence, requiring in the former both the averment and proof of negative matters, and in the latter leaving the matter of them to be set up by the defendant, if his case requires it, is so well established, and so reasonable and just, that exceptions to it should be adopted with caution, where they tend to abridge the rights of the prisoner.

But there is no reasonable objection to applying in these cases those rules of presumptive evidence, founded on experience and philosophy, that are ordinarily referred to and found to be safe guides, whether in civil or criminal practice, where positive testimony fails. There is no injustice in presuming that he who has a large quantity of spurious coin in his possession intends to make an unlawful use of it, or that he who keeps the instruments proper for forging such coin intends to employ them for such a purpose, and so set the false article in circulation. The legislature have proceeded upon that just principle of presumption, in making the possession of either of those articles presumptively a crime. So the law presumes against him who is in the possession of the fruits of crime recently after its commission, that he is its author; and that he who either destroys or suppresses evidence within his control, does so from the consciousness that it would establish the proof of the act imputed to him. 1 Greenl. Ev., sec. 37.

It is upon this principle that in the cases which have been cited the evidence of guilt has been permitted to be supplied, as to facts upon which the prisoner must have been not only perfectly informed, but generally in the possession of the evidence necessary for his defence, if in

State *v.* Simons.

existence at all, by the presumption that the evidence does not exist, arising from its non-production.

If in the present case there was a license, the prisoner knew it, and it is to be presumed might easily have produced it. That he had no license was therefore a fact which the jury were justified in presuming from his omission to produce it, since, if it existed, its production would have constituted a perfect defence; and there is no rational mode for accounting for his omission to produce it, but by supposing that it did not exist. Such in effect was the charge of the judge in this case.

As to the evidence of the sale of the liquors, it was a question of fact for the jury, and the evidence was properly submitted to them. They were instructed to inquire whether the language used by the parties to the alleged sale, and their accompanying acts, were used by them to effect a sale of the liquor under such disguises as would render the detection of the crime difficult; or whether, on the other hand, it was the purpose of the defendant to bestow, and of the other parties to receive, the liquors as a gift. Offences against the law are commonly committed under the protection of some false pretences designed to avert or baffle the vigilance of the police, and other evidence than the plain admissions of the parties charged is commonly found necessary for their conviction. The question was, did the prisoner sell the liquor, as charged? and not, did he use language while he sold it that admitted the criminal nature of the act? The jury were authorized to find a sale, from the call which was made for the article, and its subsequent delivery, and to attach such weight to the words of the prisoner while committing the act, as they thought the words deserved.

*Judgment on the verdict.*